**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMANDA PULCINI,

Plaintiff

v.

XTREMEPUSH, LLC,

Defendant.

**Case No.**

**COMPLAINT**

**Jury Trial Demanded**

Amanda Pulcini ("Plaintiff"), by and through her undersigned counsel, Dorf Nelson & Zauderer LLP, as and for her claims in this action against Xtremepush, LLC, hereby alleges as follows:

## NATURE OF THE CASE

1.      This is an action for failure to pay commissions in violation of New York State Labor Law §§ 191 and 198, retaliation in violation of New York State Labor Law § 215. Specifically, Plaintiff's employment was terminated without notice or justification within weeks of her demanding full payment of her earned quarterly recurring commissions from Defendant's Director of Account Management, Ashley D'Onofrio, and its Chief Revenue Officer, Rob Pryce.

## JURISDICTION

2.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(2) as it is between a citizen of a State and a citizen of a foreign state.  Plaintiff is a citizen of the state of New York.   On information and belief, Defendant is a Delaware LLC whose sole member is Xtremepush Limited, a company registered in Ireland.  The amount in controversy in the case exceeds $75,000.

1

3.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## PARTIES

4.      Amanda Pulcini is a resident of the State of New York, residing in Peekskill, New York.

5.      Xtremepush provides a cloud-based multichannel marketing and analytics solution that enables enterprise-grade brands, principally in the on-line gambling and sports-betting field, to analyze their mobile and web customers and drive engagement.

## RELEVANT FACTS

6.      Plaintiff was hired by Xtremepush in December 2023 as an Account Manager.

7.      Plaintiff's offer letter proposed a base salary of $130,000 plus a commission of up to 30% of her base salary subject to achieving revenue targets and agreed KPIs.

8.      At all times during her employment, Plaintiff performed her duties in an excellent manner.   In fact, for the third quarter of 2025, Plaintiff was among the highest producing Account Managers employed by Xtremepush and managed more accounts than most other managers.

9.       During the course of her employment, Plaintiff earned commission if she exceeded the monthly recurring revenue ("MRR") goal set by Xtremepush for the quarter.   The revenue goal would be communicated at the beginning of each quarter in a shared team sheet.  On this sheet, Plaintiff's goal (along with many of her colleagues), was approximately $8,500.00, additional MRR.

10.     Plaintiff was on an approved maternity leave from January 20 to August 8, 2025. During her leave, Xtremepush assigned Micheal DiGangi to cover Plaintiff's accounts.   Upon her return to work, Plaintiff resumed responsibility for her accounts and was also assigned additional accounts to manage.

11.     For the third quarter of 2025, Plaintiff exceeded her stated revenue goal.

12.     Xtremepush did not pay Plaintiff her full commission for the third quarter of 2025.

13.     Although Plaintiff had earned a commission of $10,238 for the third quarter of 2025, Xtremepush paid her only $5,881.

14.     On or about October 10, 2025, Plaintiff complained to Ms. D'Onofrio about the unlawful underpayment of her commissions.   D'Onofrio responded that she was not aware of the commission policy as it related to maternity leave and that Plaintiff should contact the human resources department.

15.     As directed, Plaintiff contacted Xtremepush Human Resources department to complain about the non-payment of her commissions but was advised that commission is an office-related matter and directed Plaintiff back to D'Onofrio.

16.     Upon further questioning by Plaintiff, D'Onofrio asserted that Plaintiff's commission was reduced because Plaintiff's MRR targets had been changed.

17.     Plaintiff disputed D'Onofrio's justification as Plaintiff was never advised that her MRR target had been increased and contemporaneous documentation contains the same targets for the entire global Account Management Team.   Nevertheless, D'Onofrio refused to comply with the law and pay Plaintiff her full commission.

18.     On or about November 6, 2025, Plaintiff escalated her complaint regarding the unlawful withholding of commissions to Mr. Pryce.   Mr. Pryce informed Plaintiff that she was not

3

paid the full amount of her earned commission because she was on maternity leave for the first month of the quarter and, therefore, was only entitled to 66% of her earned commission.

19. On information and belief, Xtremepush does not have a written commission plan.

20. Xtremepush did not state in writing to Plaintiff that her earned commissions would be reduced based on her maternity leave of absence from work.

21. Because of Plaintiff's pursuit of her legal right to her earned commissions, Donofrio began to retaliate against Plaintiff and ultimately terminated Plaintiff's employment on January 2, 2026.

## **FIRST CAUSE OF ACTION**
(Failure to pay wages in violation of New York State Law)

22. Plaintiff incorporates the allegations contained in each of the preceding paragraphs.

23. Defendant was Plaintiff's employer within the meaning of New York Labor Law.

24. Plaintiff was a commission salesman within the meaning of New York Labor Law § 190(6).

25. New York Labor Law § 191(c) requires that commission salespersons be paid their wages and commissions accordance with the agreed terms of employment.

26. New York Labor Law § 191(c) further provides that the "agreed terms of employment shall be reduced to writing, signed by both the employer and the commission salesperson … which writing shall include a description of how wages, salary, drawing account, commissions and all other monies earned and payable shall be calculated."

27. On information and belief, Xtremepush did not have a written and signed commission agreement with Plaintiff.

28. Xtremepush did not have an agreement with Plaintiff authorizing the withholding of earned commissions due to authorized absences from work.

29.     Xtremepush's withholding of $4,357 of Plaintiff's earned commission violates New York Labor Law § 193.

30.     Section 198 of the New York Labor Law provides for 100% liquidated damages plus a reasonable attorneys' fee for failure to pay wages.

31.      As a result of such violation, New York Labor Law § 198 entitles Plaintiff to liquidated damages in the amount of $4,357 plus reasonable attorneys' fees in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
(Retaliation in violation of New York Labor Law § 215)

32.     Plaintiff incorporates the allegations contained in each of the preceding paragraphs.

33.     Defendant was and continues to be an employer within the meaning of the New York Labor Law.

34.     At all relevant times, Plaintiff was an employee within the meaning of the New York Labor Law.

35.     Plaintiff engaged in activity protected under the New York Labor Law when she complained that her earned commissions had not been paid in full.

36.     Because Plaintiff had complained about Defendant's failure to pay her earned commissions, D'Onofrio retaliated against Plaintiff and ultimately discharged her from employment.

37.     New York Labor Law § 194 provides in relevant part that "[n]o employer … shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer … that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

38. Defendant's retaliatory actions constitute a violation of New York Labor Law § 194.

39. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the New York Labor Law, Plaintiff has suffered, and continues to suffer, economic harm, for which Plaintiff is entitled to an award of monetary damages and other relief, including reinstatement or an award of front pay in lieu of reinstatement (no less than $100,000), an award of lost compensation and damages (approximately $36,000 at the time of the filing of this complaint), liquidated damages (in the amount of $20,000), costs and reasonable attorneys' fees (approximately $20,000 at the time of filing of this complaint).

40. Plaintiff will notify the New York State Attorney General of the commencement of this action.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests a judgment in their favor as follows:

A. Back pay and front pay for the loss of Plaintiff's employment;

B. Liquidated and punitive damages;

C. Compensation for mental and emotional distress;

D. Prejudgment interest;

E. Reasonable attorneys' fees and costs incurred in this action; and

F. Any other relief that the Court deems just and proper.

//

//

6

Dated: April 8, 2026          **DORF NELSON & ZAUDERER LLP**
      Rye, New York

                                      By:  */s/ Andrew P. Marks*
                                        Andrew P. Marks
                                  555 Theodore Fremd Avenue
                                  Rye, New York 10580
                                  Tel: 914.381.7600
                                  amarks@dorflaw.com

                                  *Attorney for Plaintiff*